## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALD FUNK,** | : | **CIVIL NO. 1:CV-10-0664** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **DR. STAN STANISH, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Gerald Funk ("Funk"), an inmate confined at the State Correctional Institution at Coal

Township ("SCI-Coal Township"), Pennsylvania, filed this civil rights action pursuant to 42

U.S.C. § 1983 on March 26, 2010.  In the complaint Funk sets forth violations of his First and

Eighth Amendment rights, as well as various state law claims.  The alleged incidents occurred at

the State Correctional Institution at Houtzdale ("SCI-Houtzdale"), his former place of

confinement, and SCI-Coal Township.  Named as Defendants are Randall Britton,

Superintendent at SCI-Houtzdale, and David Varano, Superintendent at SCI-Coal Township.

Also named are SCI-Houtzdale employees Dr. Muhammad Naji and William Civiello,

Physician's Assistant, as well as SCI-Coal Township employees Dr. Stan Stanish and Lieutenant

Stephen Gooler.  Presently pending is a motion to dismiss the complaint filed by Medical

Defendants Stanish, Naji, and Civiello.[1]  (Doc. No. 13.)  Also pending is a partial motion to

dismiss the complaint filed by Defendants Britton, Varano, and Gooler.  (Doc. No. 26.)  For the

reasons that follow, the motion to dismiss filed by Defendants Stanish, Naji, and Civiello will be

---

[1] These Defendants have also filed a motion seeking to defer their obligation to respond
to Funk's discovery requests pending resolution of their outstanding motion to dismiss.  (Doc.
No. 20.)  Because the Court will grant the motion to dismiss filed by Stanish, Naji, and Civiello,
the motion to defer will be denied as moot.

granted.  The motion to dismiss filed by Defendants Britton, Varano, and Gooler will be granted in part and denied in part.

I.     **Allegations in the Complaint**

In this action Funk sets forth allegations of inadequate medical care and retaliation spanning a three-and-a-half year time period beginning in September of 2006, through the filing of the complaint on March 26, 2010.  While confined at SCI-Houtzdale, Funk began experiencing testicular pain and was provided with an athletic supporter.  In the end of November 2006, he was seen in medical following his collapse due to testicular pain while working in the prison kitchen.  Funk was provided with Motrin and placed on the sick call list.  On December 1, 2006, he was seen by a physician's assistant who noted his chronic pain and the need for a scrotal ultrasound.  According to Funk, the ultrasound was never performed until August 2008.

On December 11, 2006, Funk was seen by another physician's assistant for testicular pain and referred to Dr. Naji.  On December 14, 2006, Dr. Naji performed a cursory examination, and noted that Funk's pain was most likely due to mild trauma.  Funk was advised he needed time to heal, and he was told to return in six months if the pain persisted.  He was also continued on Motrin.

On January 8, 2007, Funk was seen in medical due to an injury sustained to his right arm while working at the prison.  A nurse noted minimal swelling and pain.  Ice was applied and he was put on the sick call list.  He was seen on January 17, 2007, at which time a partial tear of the tendon was suspected.  From January 30, 2007, through April 9, 2007, Funk was seen on five occasions for arm and elbow pain.  On March 1, 2007, he was provided with an elastic elbow

sleeve.  The following week, Dr. Naji assessed Funk as suffering from "elbow tendonitis."  An x-ray was ordered by a physician's assistant on April 9, 2007.  On May 16, 2007, during a routine physical, Funk complained to Dr. Naji about his persisting testicular pain.  Funk was told to return in six to twelve months if the problem continued, and Dr. Naji refused to provide any other treatment.

Funk states that his athletic supporter was confiscated on June 2, 2008.  On June 5, 2008, he attended sick call and complained to a physician's assistant that he was suffering from arm, elbow, and testicular pain, and that his athletic supporter had been confiscated.  The physician's assistant refused to discuss the testicular pain issue.  However, the physician's assistant noted Funk's arm pain and that Funk was wearing a splint.  Funk's request for a CT scan and an MRI went unanswered.  On June 9, 2008, Funk was seen by Civiello for testicular pain.  A notation of "testicular pain unknown echology. ? whether overreaction" was noted by Civiello on Funk's chart.  (Doc. No. 1 at ¶ 39.)  Civiello did order an athletic supporter.

Funk submitted a sick call request on June 29, 2008, complaining of severe testicular pain, particularly when getting up and down from his bunk bed.  Later that day he was picked up by a prison ambulance after he collapsed from pain.  Following an examination by a nurse, it was noted that the left side of Funk's groin was firmer than the right, and crutches were issued.  He was scheduled for sick call the following day.  On June 30, 2008, Civiello conducted a follow-up examination.  Funk described how the pain increased with exertion, particularly when climbing in and out of his bunk.  He also requested tests including an ultrasound, a CT Scan and an MRI, as well as an appointment with a specialist.  When Funk requested to be referred to Dr. Naji to make the necessary arrangements, Civiello insisted that nothing was wrong with Funk.  After

Funk threatened to file a grievance, Civiello told him he would get his test.  A stomach x-ray was later ordered, and Funk was referred to Dr. Naji to determine if an ultrasound was necessary.[2]

On July 1, 2008, Funk received the athletic supporter ordered on June 9, 2008.  A stomach x-ray was also performed and Funk was seen by Dr. Naji.  Funk alleges that although he told Dr. Naji about his severe testicular pain and the problems with lifting and climbing, Dr. Naji ignored him.  Funk states that even though Dr. Naji palpitated his stomach and testicles, Dr. Naji avoided the areas that needed to be examined.  Dr. Naji informed Funk that he probably had a kidney stone, and that he did not want to see him anymore.  No prescriptions were given to Funk.

The following day Funk collapsed while climbing out of his bunk.  The incident was documented on Funk's Block Card after it was reported by his cellmate.  (Doc. No. 1, Compl. Ex. A, Watkins Decl.)  The block officer thereafter moved Funk to a bottom bunk.

On July 10, 2008, Funk saw Dr. Naji again regarding complaints of testicular pain.  Dr. Naji informed him that the x-rays taken on July 1, 2008, showed the possibility of a small kidney stone and that this could be responsible for his pain.  Funk disagreed with this diagnosis.  Dr. Naji ordered a kidney ultrasound.  The order was later changed to a testicle ultrasound following objections from Funk.  On July 14, 2008, Funk submitted Grievance #236073 setting forth facts regarding his testicular pain issues and requesting to see a specialist.  The grievance and related appeals were denied.

Dr. Naji saw Funk again for complaints of testicular pain on August 6, 2008, and

---

[2]  Funk also asserts that after obtaining a copy of his medical records he discovered a notation made by Civiello on June 30, 2008, that Civiello believed Funk's pain was aimed at getting a bottom bunk.

informed Funk that he did not have a kidney stone.  Dr. Naji then told Funk that his pain was imaginary and a psychological problem.  Funk's request for a referral to a psychologist to prove Dr. Naji wrong was denied.  However, Dr. Naji did order a testicle ultrasound to convince Funk that nothing was wrong.

On September 3, 2008, Funk was seen by Dr. Naji to obtain a refill for acetaminophen for his testicular pain.  Funk informed Dr. Naji that having a bottom bunk assignment was helping his pain.  Dr. Naji informed Funk that his ultrasound showed a Hydrocele in his testicles but that would not cause pain.  Dr. Naji told Fund that he was "done with this issue."  (Doc. No. 1 ¶ 56.). An entry was made by Dr. Naji in Funk's chart which read  "[r]esolved testicle pain."

On October 3, 2008, Funk filed Grievance #245548 complaining about the inadequate medical treatment he was receiving for his testicular pain.  The grievance was rejected because the same claims were previously addressed in Grievance #236073 filed on July 14, 2008. Another grievance was submitted on October 4, 2008 (Grievance #245549), complaining about Dr. Naji's discontinuance of chronic medications in response to Funk's complaints.  Funk then filed Grievance #247403 on October 20, 2008, raising the same claims set forth in Grievance #236073.  These grievances and the appeals therefrom were all denied.

On October 9, 2008, Funk submitted Grievance #246385 challenging the rejection of Grievance #245548 filed on October 3, 2008.  Another grievance (#247538) was submitted by Funk on October 21, 2008, complaining of retaliatory acts by Dr. Naji in response to Funk's filing of complaints and grievances.  Funk states he thereafter stopped seeking medical care for his testicular pain until January 2009, due to the adverse behavior of the medical staff regarding his problem.

5

On January 6, 2009, Funk submitted a sick call request due to the testicular pain he was experiencing. He was seen by a physician's assistant who provided him with Tylenol/Ibuprofen. When Funk requested to see Dr. Naji to obtain a referral to see a specialist, he was told by the physician's assistant that Dr. Naji had resolved his testicular pain issues and found that no specialist was necessary because the problem was psychological. Although Funk requested the imposition of a five to ten pound lifting restriction, only a thirty pound restriction was ordered.

Funk was seen by Civiello on February 2, 2009, in response to a sick call request for serious testicular pain. Funk complained about having to carry in excess of ten pounds at his prison job. Although Funk requested a "physical exertion" test and to be seen by a specialist, these requests were denied. A grievance filed by Funk with respect to Civiello's actions (#260359) was denied.

On February 17, 2009, Funk states he collapsed in pain at his prison job after carrying twenty-five pound boxes. He was seen by Civiello on February 27, 2009, again for increasing testicular pain. A request for a five pound lifting restriction was denied, and Funk was advised to either toughen up or change his job. Funk states that Civiello performed a cursory hernia examination but refused to palpitate the areas Funk desired. Requests for a short medical lay-in and to see a specialist were denied. A grievance filed with respect to this matter (#263361) was also denied. While an appeal was pending before Defendant Britton, Funk states that he sustained another head injury after a fall on March 9, 2009, due to sharp testicular pains. His appeals with respect to Grievance #263361 were subsequently denied.

During the month of March 2009, Funk was seen several times by medical staff at SCI-Houtzdale. On March 23, 2009, he submitted a request slip to Dr. Naji complaining about the

inadequate treatment he had received from Civiello on February 27, 2009, and requesting an examination. Funk was seen by Dr. Naji for testicular pain on April 16, 2009. While Dr. Naji refused to address Funk's complaints, Dr. Naji did prescribe medication for allergy problems Funk was experiencing. On June 12, 2009, Funk filed Grievance #276952 with respect to the failure to be evaluated by medical personnel regarding sick call requests submitted in June complaining of headaches and testicular pain. The grievance and appeals were all denied.

On June 15, 2009, a grievance (#276957) was submitted by Funk claiming that he was told he was going to be transferred due to the complaints he was making about the medical department at SCI-Houtzdale. He further stated that Britton had threatened this action would occur. The grievance was rejected on June 16, 2009, on the basis that it presented two separate issues, and therefore needed to be resubmitted as two grievances. The same day, Funk was transferred to SCI-Coal Township. Funk alleges that the transfer was a retaliatory act by Britton, who previously informed Funk that such transfers happen to people who complain. When Funk arrived at SCI-Coal Township, he was told by Officer Custer that he was transferred from SCI-Houtzdale due to his filing of grievances, even though the official reason given for the transfer was the need by the Office of Population Management to move Level 2 inmates. Grievances pursued by Funk following his transfer with respect to this issue were unsuccessful.

The remaining claims in the complaint are with respect to Funk's medical treatment at SCI-Coal Township. He arrived on June 16, 2009, with orders to wear an athletic supporter and a forearm brace due to his continuing testicular and arm pain. In July 2009, Funk was seen in the SCI-Coal Township medical department for testicular and arm pain. While there, he

explained his history with respect to both matters.  On July 29, 2009, Funk was injured while lifting during his job on the food service line.  He was seen in medical where an incident report was written to document that Funk's medical lifting restrictions had been violated.

In early August 2009, Funk was seen by Dr. Stanish for cigarette smoke allergies.  At this visit, Funk also complained to Dr. Stanish about testicular pain, and requested to see a specialist.  Although Dr. Stanish said he "would see about it," nothing further was done.

Funk was again seen for testicular pain on August 20, 2009, which prevented him from going to yard or work.  A physician's assistant checked him for a hernia, and instructed him to continue wearing the athletic supporter.  Funk also saw a prison physician on September 9, 2009, who prescribed Neurotin for pain and ordered another ultrasound.

On September 21, 2009, Funk was placed in the Restricted Housing Unit ("RHU") pursuant to an investigation.  Although he informed the intake nurse that his athletic supporter and forearm brace were medically prescribed, they were confiscated from him.  A sick call slip requesting the return of these items was unsuccessful.  As a result, Funk sent a request slip to Defendant Varano about the matter.  On September 25, 2009, Varano informed Funk that Defendant Gooler would review the issue, and if the items were prescribed and not a security risk, they would be returned.[3]  Funk filed Grievance #290694 complaining about the failure to return these items.  The grievance and appeals therefrom were denied.  However, on October 5, 2009, the forearm brace was returned.  Gooler did not authorize the return of the athletic

---

[3]  In reviewing his medical records in February 2010, Funk states he learned that Dr. Stanish had made an entry in his medical chart on September 24, 2009, stating that although Dr. Stanish made Gooler aware of Funk's request to have these items returned, Dr. Stanish felt that security concerns outweighed Funk's medical need for the items.  (Doc. No. 1, Compl. ¶118.)

supporter.

On October 12, 2009, Funk submitted a sick call request seeking more medication for scrotal pain.  He claimed that since the confiscation he was unable to sleep and stayed in bed twenty-three hours a day.   In response thereto, a physician's assistant provided Funk with one Ibuprofen or Naprosyn in addition to the Neurotin he was already taking.  Funk argues that this failed to provide any additional relief.

Grievance #292585 was submitted on October 13, 2009, against Varano and Gooler, with respect to the confiscated athletic supporter.  The grievance was rejected on October 15, 2009, on the basis that the issue had previously been addressed pursuant to Grievance #290694.

 On October 14, 2009, Funk was released from the RHU and was placed in the general population at SCI-Coal Township.  At that time, his athletic supporter was returned.  On October 15, 2009, he submitted a sick request complaining of increasing scrotal pain.  Although he was not seen by medical pursuant to this particular request until November 16, 2009, Funk was seen by a physician on October 19, 2009, and reported that his pain, swelling and testicular problems "had decreased markedly and rapidly" since he again began wearing the athletic supporter on October 14, 2009.  At this visit, a physician's assistant also checked Funk for a hernia but ignored Funk's complaint of deep pain upon exertion.  Funk was advised to continue wearing the supporter, and no additional pain medications were prescribed.

From the end of November 2009, through the filing of the instant complaint, Funk was seen in medical on several occasions for arm pain.  At a February 26, 2010 visit, he was seen for testicular pain caused by heavy lifting.  None of these visits were with individuals named as defendants in this action.  On March 1, 2010, Funk's prison job was changed from the kitchen to

the activities department where his duties required no physical exertion.

Based on the foregoing, Funk maintains that Defendants have subjected him to needless suffering over the past three-and-a-half years due to their failure to provide the proper treatment and to order the necessary tests with respect to his testicular pain and arm tendon injury.  He also sets forth claims of retaliation for seeking medical care.  He seeks declaratory, injunctive, compensatory, and punitive relief.

## II.    Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See

Fed. R. Civ. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (explaining that Rule 8 requires more than "an unadorned, the defendant-unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Under this liberal pleading standard, courts should generally grant a plaintiff leave to amend his claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).   **III.   Discussion**

> **A.      Commonwealth Defendants' Motion to Dismiss**

Defendants Britton, Gooler and Varano ("Commonwealth Defendants") have filed a motion seeking to dismiss, in part, the complaint pursuant to Rule 12(b)(6). Defendants move to dismiss the following: (1) Count 6 of the complaint insofar as it concerns verbal threats made by Defendant Britton; (2) Counts 24 through 27 of the complaint setting forth state claims; (3) the damage claims against Defendants in their official capacities; and (4) the claims for injunctive relief against Defendants in their individual capacities.

The Court first notes that in their brief in support of the motion to dismiss, Defendants withdraw their motion as to Funk's claims for injunctive relief against them in their individual

capacities.  As such, these claim will proceed.  It is further noted that in responding to

Defendants' motion, Funk states that he does not oppose the dismissal of Counts 24-27 of the

complaint or the damage claims against the Commonwealth Defendants in their official

capacities.  As such, the motion to dismiss will be granted with respect to these claims.[4]

After resolving the foregoing, the only other claim Defendants move to dismiss from the

complaint is Count 6 insofar as it concerns threats made by Superintendent Britton.  Count 6 of

the complaint reads as follows:

> Defendant Randall Britton's acts of threatening to punish plaintiff for
> complaining and filing grievances about his medical care by, inter
> alia, costing him his lucrative job by transferring him to another
> prison, stated shortly before plaintiff actually being transferred,
> amounts to retaliation in violation of the First Amendment of the
> United States Constitution.

(Doc. No. 1 ¶ 160.)  Defendants argue that verbal abuse is not a civil rights violation, and that a

verbal threat, without more, does not amount to a constitutional violation.  Defendants are

correct in that verbal harassment and threats alone are insufficient to state a constitutional

violation under § 1983.  See Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa. 1986),

aff'd, 800 F.2d 1130 (3d Cir. 1986).  However, in construing the complaint liberally, the Court

interprets Count 6 to allege more than a claim of verbal harassment against Britton.  Funk claims

that Britton not only threatened to transfer him for filing grievances and complaints, but also that

Britton retaliated against him for filing the grievances and complaints by actually having him

transferred to a different prison.  Count 6 appears to raise a cognizable retaliation claim against

Britton, and therefore the claim will be allowed to proceed.   Accordingly, the Commonwealth

---

[4] Counts 24 through 27 set forth state law claims for negligence and negligent or
intentional infliction of emotional distress against Varano and Gooler.  (Doc. No. 1 ¶¶ 178-81.)

Defendants' partial motion to dismiss the complaint will be granted in part and denied in part. The motion will be granted with respect to the state law claims against Varano and Gooler, as well as all claims for monetary damages against the Commonwealth Defendants in their official capacities. The motion is denied with respect to the Commonwealth Defendants' motion to dismiss Count 6 to the extent Count 6 raises a claim of retaliation against Defendant Britton. The Commonwealth Defendants will be directed to file an answer to the remaining claims set forth against them in the complaint within twenty days.[5]

### B.      Motion to Dismiss filed by Medical Defendants

#### 1.      State law claims

Defendants Stanish, Naji and Civiello raise several arguments in their motion to dismiss. They first claim that the medical professional claims raised against them should be dismissed because Funk is unable to support his claims with the required expert testimony. Without unnecessary elaboration, the motion will be granted because Funk has agreed to the dismissal of all state claims raised in the complaint against these Defendants. (Doc. No. 16, Pl.'s Opp'n Br. at 5.)

#### 2.      Statute of Limitations and Claims against Dr. Naji

Defendants next maintain that all claims raised against Dr. Naji should be dismissed because they are barred by the statute of limitations. In the complaint, Funk alleges that he was first referred to Dr. Naji for testicular pain on December 14, 2006, and diagnosed with mild trauma. He was told he needed time to heal, and was advised to return in six months if his pain

---

[5]  The answer is to address all claims in the complaint the Defendants did not move to dismiss, as well as the retaliation claim against Britton and the claims for injunctive relief against Defendants in their individual capacity.

persisted.  He was also prescribed Motrin.  The next time Funk was seen by Dr. Naji was for

elbow pain on March 8, 2007.  Dr. Naji diagnosed Funk as suffering from elbow tendonitis.

During a routine physical on May 16, 2007, Funk complained of persisting testicular pain, and

was told to return again in six to twelve months if the pain persisted.  Beginning in July 2008,

Funk details repeated visits to Dr. Naji over the course of the following year wherein Funk's

complaints of severe testicular pain were ignored.  It was during these visits that Funk alerted Dr.

Naji to facts relating the pain to exertion and lifting and the need for various medical tests and a

referral to a specialist.

Civil rights claims are subject to the statute of limitations for personal injury actions of

the pertinent state.  Thus, Pennsylvania's two year statutory period applies to these claims.  See

Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003); Lake v. Arnold, 232 F. 3d 360,

368 (3d Cir. 2000).  The limitations period begins when the plaintiff knows or had reason to

know of the injury forming the basis for the federal civil rights action.  Gera v. Pennsylvania,

256 F. App'x 563, 564-65 (3d Cir. 2007).

The complaint in this action was filed on March 26, 2010.  As such, it is clear that the

claims raised against Dr. Naji arising prior to March 26, 2008, are barred by the statute of

limitations.   However, the majority of claims raised with respect to Dr. Naji occurred within the

applicable statutory period.  Defendants argue that all claims set forth against Dr. Naji should be

dismissed since Funk had concerns with medical treatment he was receiving from Dr. Naji

beginning in December 2006.  The Court finds Defendants' position unpersuasive.  As such,

only those inadequate medical claims set forth against Dr. Naji arising prior to March 26, 2008,

will be dismissed on the basis of statute of limitations.

14

### 3. Failure to exhaust claims against Dr. Stanish

Defendants next seek the dismissal of all claims against Dr. Stanish due to Funk's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). This section provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73 (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Id. at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 549 U.S. 199, 210-11 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir.

2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90-91.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Id. at 93 (quoting Porter, 534 U.S. at 525).  Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.").  Procedural default is a question of law.  Id. at 232.

In moving to dismiss the claims set forth against Dr. Stanish, Defendants attach the verification of Kandis Dascani, Assistant to the Superintendent at SCI-Coal Township.  (Doc. No. 13-3.)  Dascani also holds the subordinate titles of Grievance Coordinator and Litigation Coordinator, and is responsible for reviewing all grievances filed by inmates at SCI-Coal Township.  If an inmate is unsatisfied with the response received to his grievance, he then has two remaining levels of appeal he must pursue to exhaust the grievance procedures in place.  The first level is to the Superintendent at SCI-Coal Township.  Thereafter, he must appeal to the

16

Secretary's Office of Inmate Grievances and Appeals.[6]  According to Dascani's review of the grievance records for Funk, Funk has not filed any grievance specifically naming Dr. Stanish relating to either (1) an alleged failure to properly treat him for testicular pain, or (2) an alleged failure to allow him to possess an athletic supporter due to security reasons.  (Id. at 2.)

However, in reviewing the complaint, as well as Funk's brief in opposition to the motion to dismiss and the documents attached thereto, it appears that Funk did attempt to exhaust the claims set forth against Dr. Stanish, but was unaware of his name at the time.  Funk submits evidence that he did attempt to secure the physician's name and was provided the incorrect name by Kathryn J. McCarty, Health Care Administrator .  (Doc. No. 16, Ex. B.)  As such, in accepting all allegations as true at this point, it appears that Funk did file grievances through the proper channels with respect to the claims in issue, but named "Brian Davis" instead of Dr. Stanish based upon incorrect information received from McCarty.  Therefore, the Court will decline to grant the motion to dismiss the claims against Dr. Stanish based on Defendants' argument that Funk failed to exhaust his administrative remedies.  See Williams v. Beard, 482 F.3d 637, 639-41 (3d Cir. 2007) (reversing district court which granted summary judgment to defendant not named in initial prison grievance because procedural default should have been excused where defendant was "fairly within the compass" of the plaintiff's grievance).

**4.  Failure to State Eighth Amendment Claims against Defendants Naji, Civiello, and Stanish**

Defendants also argue that Funk has failed to set forth viable Eighth Amendment

---

[6]  These procedures are set forth in the Pennsylvania Department of Corrections Inmate Grievance System Policy, DC-ADM 804, Pennsylvania DOC Consolidated Inmate Grievance Review System.

17

inadequate medical care claims against them.  The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  Rouse v. Plantier, 182 F.3d 192,197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish a violation based on the Eighth Amendment, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  The "deliberate indifference" standard is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action.  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997).  The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 841.  Only egregious acts or omissions can violate this standard.  See White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  Estelle, 429 U.S. at 106.  "Allegations of medical malpractice are not sufficient to establish a Constitutional violation."  Spruill, 372 F.3d at 235.  An inmate's

18

disagreement with medical treatment also does not rise to the level of "deliberate indifference."
See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Boring v. Kozakiewicz, 833 F.2d 468,
473 (3d Cir. 1987).

Defendants maintain that Funk asserts nothing more than claims of unsuccessful medical
treatment or medical malpractice at best.  They argue that he fails to set forth facts demonstrating
deliberate indifference on the part of any of the Defendants.  In accepting as true all factual
allegations in Funk's complaint, and drawing all reasonable inferences therefrom, the Court finds
that it must agree with Defendants.

First, the Court finds that any claims set forth against Dr. Stanish must be dismissed.  The
only allegations in the complaint with respect to Dr. Stanish are that when Funk was seen by him
in early August of 2009 for allergies, but also voiced complaints about testicular pain, Dr.
Stanish said that he would look to see about having Funk visit a specialist.  Funk claims Dr.
Stanish failed to do so.  These claims amount to nothing more than negligence.  The only other
time Dr. Stanish is mentioned is with respect to a notation made by Dr. Stanish in Funk's
medical record with respect to the issue of whether Funk's athletic supporter should be returned
to Funk while confined in the RHU.  Although Funk may not agree with Dr. Stanish's belief that
security outweighed Funk's medical need for the athletic supporter at that time, this amounts to a
difference of opinion between a patient and a doctor, and does not amount to "deliberate
indifference to a serious medical need."  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990).  For these reasons, Dr. Stanish is properly dismissed from this action.

The Court also finds that the Eighth Amendment claims set forth against Dr. Naji and
Civiello are also subject to dismissal.  The Third Circuit has specifically found deliberate

indifference when: (1) a prison official knows of the prisoner's need for treatment but intentionally refuses to provide it; (2) the prison official delays necessary medical treatment for non-medical reasons; or (3) the prison official prevents a prisoner from receiving needed or recommended treatment. Rouse, 182 F.3d at 197. The complaint details Funk's complaint of testicular pain over the course of several years. Chronic pain can constitute a serious medical need. See Wenzke v. Corr. Med. Servs., 603 F. Supp. 2d 770, 778 (D. Del. 2009) (finding that inmate's complaints of testicular pain for many years constituted serious medical need). While the complaint reflects that Funk consistently complained of testicular pain, he was provided examination after examination, including the ordering of various tests by Defendants, to disclose any potential source of the pain. Where, as here, treatment was consistently provided, Funk's claim is essentially that the treatment was inadequate. Funk's allegations that Defendants failed to provide the treatments he thought necessary or desirable, however, amount to nothing more than a disagreement with the exercise of Defendants' medical judgment. See Lopez v. Grainey, No. 08-cv-1342, 2009 WL 2046153, at *3-4 (W.D. Pa. July 14, 2009) (finding that prison medical defendants were not deliberately indifferent to inmate's testicular pain in violation of Eighth Amendment where claims amounted to mere difference of opinion.).

In the instant case, the complaint demonstrates that Dr. Naji and Civiello examined and treated Funk's complaints each time he sought medical treatment. His complaints were not ignored, rather his allegations demonstrate that he was examined and tested on numerous occasions. Funk also admits that he received pain medication and lifting restrictions in response to his complaints. Although he may have desired different medications and more stringent lifting restrictions, at best these claims amount to negligence and not deliberate indifference. To

the extent Funk may claim that the medical treatment provided to him has not afforded him relief from his symptoms, this claim also does not rise to the level of an Eighth Amendment violation. See Brownlow v. Chavez, 871 F. Supp. 1061, 1064 (S.D. Ind. 1994) ("The Eighth Amendment does not guarantee a prisoner's choice of a physician, a mode of treatment or a place of treatment, nor does or could it guarantee a particular outcome of level of comfort in the face of physical maladies."). Thus, Plaintiff's disagreement with the exercise of medical judgment, or his desire for different tests or referral to a specialist cannot support a claim that Defendants were deliberately indifferent to his serious medical needs. For these reasons, Funk's Eighth Amendment claims will also be granted with respect to Dr. Naji and Civiello.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **GERALD FUNK,** | : | **CIVIL NO. 1:CV-10-0664** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **DR. STAN STANISH, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW, THEREFORE, THIS 31ˢᵗ  DAY OF MARCH, 2011,** in accordance with

the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.  The motion to defer obligation to respond to Plaintiff's discovery requests filed
    by Defendants Stanish, Naji and Civiello  (Doc. No. 20) is **denied as moot**.

2.  The partial motion to dismiss the complaint filed by Defendants Britton, Varano
    and Gooler (Doc. No. 26) is **granted in part and denied in part**.  The motion is
    **granted** with respect to Counts 24 through 27 of the complaint (the state law
    claims), as well as all claims for damages against Defendants in their official
    capacity.  The motion is **denied** in all other respects.

3.  The motion to dismiss filed by Defendants Stanish, Naji and Civiello (Doc. No.
    13) is **granted.**

4.  Defendants Britton, Varano and Gooler shall file an answer to the remaining
    claims in the complaint within twenty (20) days.


                                         S/ Yvette Kane
                                        YVETTE KANE, Chief Judge
                                        Middle District of Pennsylvania